STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* CLAYTON MORGAN, DEFENDANT AND APPELLANT.

No. 9748.

Submitted February 19, 1957. Decided February 20, 1957.

307 Pac. (2d) 244.

Messrs. Rankin & Acher, Helena, for appellant.

Mr. Forrest H. Anderson, Atty. Gen., Mr. Louis Forsell, Asst. Atty. Gen., Mr. Frank T. Hooks, County Atty., Townsend, for respondent.

Mr. Arthur P. Acher and Mr. Forsell argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal by the defendant from a judgment entered on his plea of guilty of burglary in the second degree, and from an order denying his motion for leave to withdraw his plea of guilty and substitute therefor a plea of not guilty.

The facts are that the defndant was arrested on August 22, 1956, and charged with driving a motor vehicle without a driver's license.

At the time of his arrest, in conversation with the sheriff, he admitted that certain items in his car had been stolen, and he gave the sheriff permission to open the trunk of the car. The county attorney was absent and his office associate was called to the sheriff's office and he talked with the defendant. On the following day the defendant was brought to the office of the county attorney by the undersheriff, and there an interrogation was had of the defendant by the office associate of the county attorney with the permission of the defendant, who was advised of his constitutional rights. A statement was

dictated to a stenographer, covering the burglary, in which statement the particular description of the items stolen was dictated by the defendant. After completion of the statement it was signed by the defendant.

An information was filed on August 31, 1956. The defendant entered a plea of guilty thereto on September 4, 1956, at which time he advised the court that he did not desire counsel to defend him. The court imposed a sentence of two years in the state prison.

On September 6, 1956, a motion to vacate and set aside the judgment of conviction of September 4, 1956, was made and filed, coupled with a motion for leave to withdraw the plea of guilty and to substitute therefor a plea of not guilty. The motion was based upon the affidavit of the defendant, in which he alleged:

"* * * that affiant understood that if he cooperated with the officers it would be easier for him; that he did not need an attorney and affiant was given to understand that Robert Barringer did not desire to press charges against him and that if he talked freely and gave a statement, he would receive a suspended sentence;

"* * * that on September 4, 1956, affiant was taken before the judge of the above entitled court, arraigned, entered a plea of guilty; that affiant was acting under the belief that a suspended sentence would be imposed; that affiant had never before been arrested or had occasion to employ an attorney; that at the time of sentence affiant believed that an attorney would not be necessary since he expected to receive a suspended sentence; * * *."

The motion was heard by the court on September 12, 1956, at which time the matter was submitted by the defendant upon his affidavit. No counter-affidavits having been filed, the county attorney advised the court that he had no opposition to the motion. Both the county attorney and his office associate made statements to the court with regard to the circumstances of the case from which it appears that both were of

the opinion that a suspended sentence should be given as punishment, and both so informed various persons who were interested in the matter, such as the undersheriff, the owner of the cabin which had been burglarized, and the employers of the appellant, who were owners of property also burglarized. As evidencing the feelings of the office associate of the county attorney, he testified:

"I expressed my feeling that the defendant had evidenced a great deal of lack of intelligence in his actions, and it is my recollection that we agreed that possibly the recommendation of a suspended sentence would be proper recommendation in this case. * * *

"Mr. Cartwright was in the office to see my father who was out at the time, and we talked, and it is my recollection that our conversation was more or less the same, and Pete said, and I agreed, there might be a possibility of a suspended sentence and I said the lad would be under the close scrutiny of the Court and if he was a 'bad apple', he'd be sent up. Pete agreed with my general idea and that he was taking a chance on making a criminal out of him by sending him to Deer Lodge. I at no time told Morgan or promised him anything, to obtain a statement. I think it is possible, I do not have any definite recollection, and I believe it to be true, that on an occasion before sentencing when the Barringers were in the office, I disclosed my thoughts on the matter; that I thought a suspended sentence was proper in this case, and Kickbush believed it would be proper and Cartwright thought that to be the proper disposition of the case. I could state that in a way, to get back to the defendant, whereas he understood that to be my position, I made no proposition to the defendant to obtain his statement or at any time thereafter, nor did I tell him he'd get a suspended sentence. We told him the same thing we tell all people in trouble; we advise them they get along better if they cooperate with the law officials and if they cooperate, that matters will be brought to the attention of the Court, and the Court is aware in this case I think, through the actions of the

County Attorney, that Morgan did cooperate in every particular.''

On cross-examination by defendant's counsel, he testified:

''Q. Mr. Hooks, you recall on the 6th of September, after preparing a proposed affidavit, which is now on file, signed by Clayton Morgan, showed it to you in the Clerk's office? You happened to come in there. A. Yes.

''Q. And I asked you if there was anything in the affidavit that was inconsistent with your understanding of the situation in any way? A. Yes, and I read it at that time, and I replied there was not, and as I recall, I think the affidavit states that the defendant gained the implication from me.

''Q. I think the Judge made the statement stronger in his review of the facts than the affidavit goes, but you'd agree? A. He could have easily gotten the implication from me, in that someone told him what I said. It was no secret of what our investigation revealed, and the complaining witness and the sheriff's office thought—and we'd been to the Barringers, who were victims of one of the burglaries—so he could have obtained the implication. I at no time assured him of any such thing.

''Q. You did, though, suggest to him that if he cooperated with the authorities, it would be easier for him?

''A. That's right, yes; that's standard practice.

''Q. And you feel that he could have had the understanding, in view of the circumstances, that he was going to get a suspended sentence if he plead guilty? A. He could have gathered the implication from what Mr. Kickbush and I told him; we talked over the matter of the service with him and that would lead some people to believe they were not going to Deer Lodge. I might add that after talking with the County Attorney on his return, we called the Navy Recruiting office in Helena and talked the matter over with them there and the big bar to anything of that kind—and in which we thought the Judge should be informed—was whether he could pass the intelligence requirements. We talked with all of them and

after talking to them, based on my set of facts, they were of the opinion it would be useless for him to take the examination.

"Q. On the grounds of his lack of education? A. Yes. I told them what he had told me, and certainly his manner and way of speaking and general activities bear it out, that he had nothing more than a fourth grade education, and they say on the basis of their studies, that's not enough.

"Q. Isn't it a fact that the defendant told you that he was intoxicated at the time in question? A. He emphasized that at all times, he never changed that. I used his words, he said specifically, 'I was looped'; and that appears in the statement.

"Q. In other words, you appreciate the fact that under certain circumstances intoxication may make negative the intent and that question is present in this case? A. It was one of the factors considered in making up my own mind as acting County Attorney; that factor coupled with the very stupid thing he did, of a burglar running around town for several days after a burglary; his whole actions didn't indicate that type of burglar one usually encounters."

The county attorney, in his statement to the court, stated:

"That evening—the paper comes out on Wednesday evening, although dated Thursday—Cartwright called me at my home and we discussed it, and Pete said, 'Frankly, I think we should get a suspended sentence.' So that was our theory of it, and I will frankly state to the Court that I looked the whole situation over from top to bottom and had the statement before me, and it's in my file, and as the County Attorney, I concluded that in my opinion, the suspended sentence was the proper course. The following day I saw you. As to the defendant himself, I never laid eyes on him until he came to the Court Room the day he was sentenced, but as County Attorney, I would make, in a similar case, having all the factors in mind, I would make a similar recommendation, and do so now."

At the conclusion of the hearing the motion was denied, and this appeal was taken.

Error is charged in denial of the motion for leave to with-

draw the plea of guilty and enter a plea of not guilty, and in the court's refusal to vacate the judgment of conviction.

This court stated in State v. McAllister, 96 Mont. 348, 30 ▮ Pac. (2d) 821, 823, that: "A change of plea will ordinarily be permitted if it fairly appears that the defendant was in ignorance of his rights and of the consequences of his act, or if influenced unduly and improperly either by hope or by fear in making it, or if it appears that the plea was entered under some mistake or misapprehension. 16 C.J. 398. This court has recognized the right of so doing in State v. Nicholas, 46 Mont. 470, 128 Pac. 543, State v. Dow, 71 Mont. 291, 229 Pac. 402, and State ex rel. Foot v. District Court, 81 Mont. 495, 263 Pac. 979, and has also held that the right may be exercised in a proper case after judgment has been pronounced. State ex rel. Foot v. District Court, supra. It is a matter that rests in the discretion of the trial court and is subject to review only in the case of an abuse of discretion. State ex rel. Foot v. District Court, supra. Each case of necessity must depend upon its own facts and circumstances, and no hard and fast rule can be laid down that will fit every case. When application is made to change the plea, all doubts should be resolved in favor of a trial on the merits (People v. Rucker, 254 Mich. 342, 236 N.W. 801; Pope v. State, 56 Fla. 81, 47 So. 487, 16 Ann. Cas. 972; Krolage v. People, 224 Ill. 456, 79 N.E. 570, 8 Ann. Cas. 235; People v. Wheeler, 349 Ill. 230, 181 N.E. 623), and the discretion of the court should be liberally exercised in favor of life and liberty (Hubbell v. State, 41 Wyo. 275, 285 Pac. 153; State v. Raponi, 32 Idaho 368, 182 Pac. 855)."

We followed this rule in State v. Casaras, 104 Mont. 404, 66 Pac. (2d) 774; State v. Dryman, 125 Mont. 500, 241 Pac. (2d) 821; and State v. McBane, 128 Mont. 369, 275 Pac. (2d) 218.

In view of these holdings by this court we are of the view ▮ that the appellant, at the time of the entry of his plea without the aid of counsel, felt that he had an understanding

as to what judgment would be rendered against him. While it may be that no direct commitment was made to him by any of the officers to whom he talked, yet statements were made by these officers to others who were in contact with the appellant, and undoubtedly upon whose advice he relied, and we believe that the ends of justice would be best served by permitting the appellant to change his plea.

For these reasons the judgment of conviction is reversed. The cause is remanded to the district court with directions to vacate the judgment and allow the appellant to withdraw his plea of guilty and to enter a plea of not guilty, and for further proceedings in that court not inconsistent herewith.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN and ADAIR, concur.