# PETITION OF LEROY H. JONES.

No. 10703

Decided November 21, 1963.

Rehearing denied December 27, 1963.

386 P.2d 747

See 143 Mont. Page 311, 387 Pac. 2d 912.

20

**PER CURIAM.**

This is a petition for a writ of error coram nobis "or other appropriate relief." In his handwritten petition, the applicant, LeRoy H. Jones, requests this court to allow him to withdraw his plea of guilty of January 27, 1960, to a charge of grand larceny, to allow him to substitute a plea of not guilty, and to grant him a new trial. He also requests this court to appoint counsel for him.

The applicant has proven himself a prolific author of cell block petitions. His career was initiated by a petition to this court for a writ of habeas corpus, which was denied for lack of merit by order dated July 6, 1960. He then petitioned the Supreme Court of the United States for a writ of certiorari which was denied by order dated October 17, 1960. He turned to the Federal District Court and sought, without success, a writ of habeas corpus (denied December 2, 1960). Following an unsuccessful petition for rehearing, he fixed his sights on the United States Court of Appeals for the Ninth Circuit, and was denied relief by order dated March 6, 1961. Turning eastward, he again petitioned the Supreme Court of the United States for the grant of a writ of certiorari, which petition was denied by order dated May 22, 1961. With noteworthy perseverance

he again sought a writ of habeas corpus from the Federal District Court, which was denied by orders dated August 4, 1961, and October 6, 1961.

Because this court has already considered the question of whether the applicant is entitled to extraordinary relief, and has answered in the negative, as has every other court of review to which the applicant has access, the most appropriate action to take with reference to the instant petition would appear, at first blush, to be a summary denial of the same. However, whereas the applicant formerly alleged his trial was unfair because of a physical and mental condition characterized by him as "rum dum from drink, and being cooped up in the county jail with no fresh air", several years of reflection have convinced him he was actually the victim of a "schizophenia [sic] personality disease". Because of this new allegation, we will, in the interest of completeness, set forth in greater detail than is normally appropriate in cases of this nature, the reasons for our disposition of the petition now before us.

Attached to the petition are certain allegations of fact and a document labeled "contentions", and in his statement of facts, the applicant concedes the trial judge apprised him of "his rights" and asked him if he desired counsel. He states that he refused counsel and pleaded guilty, but he was "not mentally competent to understand fully the court proceedings at the time of trial and sentencing, because of gunshot wounds throughout face, head and eyes, resulting in blackouts, dizziness [sic], loss of memory, and these afflictions are triggered by the use of alcohol." He also alleges he suffered at the time of his arraignment and plea, and will suffer during the balance of his natural life, from a "single schizophenia [sic] personality disease," which also resulted in his being discharged from the service, for medical reasons in 1945.

From our examination of the official transcript of the proceedings in question, we note the trial judge carefully and

22

accurately explained to the applicant his rights respecting counsel. Of interest is the fact that after the applicant declined the assistance of counsel, the trial judge made the following prophetic observation:

"Well, we sometimes dislike having individuals charged with crime on pleas of guilty go down to the penitentiary or something of that nature and raise the claim that they were deprived of their constitutional rights, that they got into court and didn't know what was going on, didn't know what was taking place, didn't have a lawyer, wasn't given a chance to consult with a lawyer and so on. We don't want that to happen. From what I have told you now you still wish to proceed, do you, without an attorney?" To the last question the applicant answered in the affirmative.

We find the petition presents but one issue meriting discussion, i. e., has the applicant made a sufficient showing to warrant the conclusion that he might have failed to make an intelligent waiver of his admitted right to counsel. If the answer is in the affirmative, this court is in a position to grant appropriate relief. State v. Zumwalt, 129 Mont. 529, 291 P.2d 257 (1955). If the answer is in the negative, the petition must be denied because the various wrongs of which the applicant was the alleged victim could have been cured by suitable and timely action in accordance with the usual statutory trial and post trial remedies available to a criminal defendant in this state. See e. g., Kuhl v. District Court, 139 Mont. 536, 366 P.2d 347 (1961); State v. Kitchens, 129 Mont. 331, 286 P.2d 1079 (1955); State v. Dryman, 125 Mont. 500, 241 P.2d 821 (1952). The orderly administration of justice obviously requires that whatever errors or irregularities are waivable, through failure to seasonably invoke available remedial measures, by a defendant represented by competent counsel are likewise waivable by a defendant who intelligently waives his right to counsel. See People v. Richardson, 17 Ill.2d 253, 161 N.E.2d 268 (1959); Blanton v. State, 229 Ind. 701, 98

N.E.2d 186 (1951). Were it otherwise, an open invitation would exist for induced error and other forms of chicanery on the part of a cunning criminal defendant. See People v. Richardson, supra.

█ Because the applicant was asked by the trial judge if he desired counsel and expressly refused the same, after a complete explanation of his rights with respect thereto, our sole concern is whether, on the strength of the petition before this court and the surrounding circumstances, the applicant's mental condition may possibly have vitiated what otherwise would constitute an effective waiver of his statutory (section 94-6512, R.C.M.1947), and constitutional, (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), right to be represented by counsel. Although a defendant being tried for a felony has a right to be represented by counsel, who must be furnished by the court if he is financially unable to retain his own lawyer, he may waive that right and acknowledge his guilt, provided the choice is made with his eyes open. Carter v. Illinois, 329 U. S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946) ; see also Adams v. United States ex rel. McCann, 317 U. S. 269, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435, (1942). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of [the] right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U. S. 458 at 464, 58 S.Ct. 1019, at 1023, 82 L.Ed. 1461, 146 A.L.R. 357 (1938).

█ We are of the opinion that a defendant who expressly refused the assistance of counsel and who, almost four years after his conviction following a guilty plea, alleges that he did not "understand fully the court proceedings" because, according to his uncorroborated allegations, he was suffering from "a simple schizophenia [sic] personality disease"

24

and from "gunshot wounds throughout face, head and eyes, resulting in blackouts, dizziness [sic], loss of memory * * * triggered by the use of alcohol", has not made a sufficient showing to warrant the granting of relief by this court.

Indeed, even accepting his allegations as true, it could not be said with certainty that they indicate an inability to accomplish an intelligent waiver of the applicant's right to counsel. Upon the instant collateral attack, the judgment under which he was convicted is vested with a presumption of regularity and the applicant would, should we grant him a hearing, have the burden of proof concerning the alleged deprivation of his constitutional and statutory rights. Johnson v. Zerbst, supra. Since a mental deficiency obviously does not, *ipso facto,* indicate an inability to competently and intelligently waive the right to counsel, and since the applicant's allegations do nothing more than conclude that he did not understand the proceedings against him because of some vague and ill-defined mental disorders, it is doubtful that he could sustain that burden of proof.

However, we are not compelled to accept the truth of the applicant's allegations when the truth is belied by his own petition and the relevant surrounding circumstances. In re Petition of Edward L. Jones, 142 Mont. 622, 387 P.2d 300, (1963). The applicant, by his own statement a parolee, asserts that he did not fully understand the court proceedings, and then proceeds to set forth in meticulous detail the history of his arrest, detention and trial. His resume of what transpired at the trial includes such specifics as when he stood up and sat down, what the judge said to him, the demeanor of the judge, and the substance of a conversation between himself and an attorney who represented a co-accused at the same trial. Clearly, that is not the product of a man who was, because of insanity, so befuddled by the proceedings that he was incapable of an intelligent waiver of his right to counsel.

Furthermore, we cannot overlook the inconsistencies between

the applicant's former petitions to the several courts mentioned earlier in this opinion, and the petition now under consideration. We have already pointed out one such inconsistency and, by way of example, will mention another. In what appears to be his last effort prior to the instant petition, he alleges commitments to various naval hospitals in 1941, 1942, and 1944 for acute or chronic alcoholism, followed by a discharge in 1945 for "incompetence, mental instability, and chronic alcoholism." In the instant petition he omits any reference to alcoholism and, though he repeats his allegations respecting commitments to the various naval hospitals, the reason for the commitments now given is "mental observation." He states that he was given a medical discharge from the service because of "simple schizophenia [sic] personality" and, incredibly, cites as authority for his medical discharge what appears to be a reference to the United States Manual for Courts Martial.

Of further relevance is the fact that a preliminary hearing on the question of the applicant's sanity was not held, as required by section 94-9302, R.C.M.1947, when "a doubt arises as to the sanity of the defendant." Since we assume that the trial judge acted in accordance with the dictates of the law applicable to the case, at least until the propriety of his action is called into question, we must also assume that the applicant's appearance indicated to the trial judge that a doubt as to his sanity, within the meaning of the above-cited statute, did not exist. In other words, he appeared capable of understanding the nature of the proceedings against him, his condition with reference thereto, and of participating intelligently in his defense, had he so desired. State v. Kitchens, supra; People v. Aparicio, 38 Cal.2d 565, 241 P.2d 221, (1952) ; People v. Perry, 14 Cal.2d 387, 94 P.2d 559, 124 A.L.R. 1123, (1939). While the applicant alleges that he was insane at the time of his arraignment and plea, he does not allege facts from which it could be reasonably inferred that his demeanor

gave rise to a question in the mind of the trial judge concerning his sanity. Certainly a reading of the transcript covering his arraignment discloses nothing that would give rise to any question regarding his sanity.

 Furthermore, the applicant's allegation that his insanity is permanent becomes meaningful when considered in the light of his present incarceration in the State Prison and the statutory duty of the warden of that institution to take acion to remove insane prisoners to the State Hospital. R.C.M. 1947, § 80-745. Here again, we must assume that public officials perform their statutory duties, in the absence of allegations to the contrary, and that therefore no circumstances exist which warrant compliance by officials at the State Prison with the above statute.

We are mindful of the proposition set forth in Massey v. Moore, 348 U. S. 105, 108, 75 S.Ct. 145, 147, 99 L.Ed. 135, 42 A.L.R.2d 1405, (1954), that "One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel." However, that case involved a plea of not guilty, where the handicap of a mentally deficient person who is compelled to undertake his own defense is obvious. Moreover, the instant decision is not bottomed upon the fact alone that a question as to the applicant's sanity did not arise in the mind of the trial judge. Rather, as is apparent from what has been said above, our holding is founded upon the aggregate of the circumstances surrounding this case

 It is also appropriate to note parenthetically that, to the extent the applicant's petition requests he be allowed to withdraw his plea of guilty and counsel be appointed for him, he has chosen the wrong forum; such requests must be addressed to the trial court, for this court is lacking in authority to grant either form of relief. Brown v. State, 140 Mont. 289, 371 P.2d 262 (1962).

In accordance with the foreging, the petition is denied and the proceeding dismissed.