THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v.
HERMAN PELKE, DEFENDANT AND APPELLANT.
No. 10565.
Submitted January 15, 1964. Decided February 13, 1964.
389 P.2d 164.

Richard W. Josephson (argued), Big Timber, for appellant.

O. J. Paulson, Big Timber, Donald A. Douglas (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment and sentence upon a plea of guilty to the crime of first degree burglary and from a subsequent order denying a motion for leave to withdraw the plea. The motion and allied papers, including a request for appointment of counsel were filed on October 25, 1962, by the defendant, appearing pro se, while an inmate of the Montana State Prison. Following the order denying the motion dated November 16, 1962, this appeal was taken. Upon the filing of the notice of appeal, the court appointed counsel for the appellant who thereafter prosecuted the appeal.

The appellant's specifications of error arise from the following facts. On July 19, 1962, the appellant was arraigned on a charge of burglary, pleaded guilty thereto, and was sentenced to a term of ten years in the Montana State Prison. He waived the statutory time to which a defendant is entitled between the arraignment and his plea and between his plea and the sentence. By his own admission, he also waived his statutory right to be represented by counsel at the time of the arraignment and plea; and the record amply demonstrates that such a waiver was accomplished.

At the outset of the above-mentioned proceedings, and before the arraignment, the court informed the defendant that he was charged with first degree burglary and that the charge "if proven, *or on a plea of guilty*, carries with it a punishment of not less than one year nor more than fifteen years in the

state prison at Deer Lodge, Montana." (Emphasis supplied.) Following the defendant's plea of guilty there ensued an extraordinary colloquy between the defendant and the trial judge. After observing that the defendant had previously been convicted of offenses in Nebraska, Minnesota, Idaho, and Montana, and that "it would almost appear as though the public isn't safe when you are out of prison," the judge stated he was going to make the defendant's sentence "a stiff one." Whereupon, the defendant expounded, with considerable articulation, his theory that his constitutional rights would be violated if the judge should consider his past offenses in assessing an appropriate sentence. That, said the defendant, would constitute double jeopardy. He also argued that "equal rights and equal justice" require that he be given a sentence similar to the relatively light sentences given the defendant's two companions in the burglarious enterprise, who likewise had pleaded guilty. He acknowledged, however, that he had been given no promises as to what his sentence would be.

After patiently explaining to the defendant that a man's past record was a relevant and legally proper consideration in assessing an appropriate sentence, and listening at length to the defendant's views, the judge imposed a sentence of ten years in the state prison. (The state chose not to utilize section 94-4713, R.C.M.1947, which provides for a mandatory increase in the severity of a sentence when a prior felony conviction is alleged and proven). Immediately after sentence was pronounced, the defendant requested that he be allowed to withdraw his plea of guilty because he had no counsel and because it was "mostly fear and confusion" which induced him to enter the plea. He did not specify what caused his fear, nor did he particularize the source of his confusion, in spite of the statement of the trial judge that "if there were any reason that you had for withdrawal of a plea except the sentence that I had given you I would probably grant the privilege." The judge thereupon denied his request.

Subsequently, on October 11, 1962, the defendant filed a written motion for leave to withdraw his plea of guilty. Accompanying the motion were two affidavits executed by fellow inmates at the state prison who were likewise cellmates of the defendant in the Sweet Grass County jail while he was awaiting trial. These documents aver that the owner of the building allegedly burglarized "arrived at the county jail unbeknownst to the authorities and cursed and threatened said Herman Pelke [the defendant] and told him that if he, Herman Pelke was acquitted on the charge of 1st Degree Burglary, that he, Charles Nicholson would personally see that Mr. Pelke would never get out of town, Big Timber, alive as he, Charles Nicholson would shoot him with a gun before he could get out of town." A single quotation suffices for both affidavits, for the two affiants chose identical language to express their respective versions of the transaction.

Missing in the defendant's motion is any allegation that he was, in fact, put in fear by the alleged threats of Mr. Nicholson. Also missing is an affidavit by the defendant himself concerning whether any such threats were made. In fact, the defendant's motion was devoid of any specific allegation respecting the ground upon which he relies in support of the contention that his plea of guilty was involuntary. Furthermore, and most significantly, there is not the remotest indication, in the defendant's allegations or elsewhere, that the defendant may have pleaded guilty to a crime he did not commit. Indeed, he admitted, during his discussion with the trial judge before sentence was pronounced, that he entered the building allegedly burglarized because he "was short of funds."

The State opposed the defendant's motion with two counter affidavits, one of which was executed by Charles Nicholson, the victim of the burglary. In his affidavit, Mr. Nicholson stated:

"That he was one of the owners of the City Club Lanes which business was operated in a certain building located at 202 An-

derson Street, Big Timber, Montana, and which building was burglarized by Herman Pelke, the above named defendant, and Keith McMann, on the 23rd day of June, 1962;

"That a quantity of whiskey was taken from his business by the defendant and Keith McMann;

"That on or about the night of July 11th, 1962, he visited the county jail at Big Timber, Montana, with J. M. Schneider for the purpose of obtaining information as to the location of this whiskey, and that he talked to Keith McMann and the defendant; that he recalls telling the defendant and Keith McMann that they were fortunate or lucky that he was not in his place of business the night that they broke into his building because he would have shot them in order to protect his property;

*"That he has never made any threats of any kind or manner that would put defendant in fear of his life;* (Emphasis added.)

"That on July 19th, 1962, this affiant had another conversation with the defendant; that this conversation lasted approximately one hour and during the conversation, the defendant told this affiant about the manner in which entry was made into said City Club Lanes; that defendant told this affiant the amount of the whiskey that was obtained and the price he obtained for it; that the defendant refused to tell this affiant the name of the person or persons to whom the whiskey was sold but said that he had used the money obtained to pay bills;

"That defendant asked this affiant to write a favorable letter for him when he came up for parole, and also asked this affiant if he would act as agent for the selling of leather craft items that the defendant contemplated making while at the Montana State Prison;

"That defendant stated to this affiant that he was sorry he had burglarized affiant's place of business and wished that instead he had burglarized the American Legion Club at Big Timber, Montana."

By order dated November 16, 1962, the trial court, on the basis of the motion, supporting affidavits, and counter-affidavits, denied the defendant's motion for leave to withdraw his plea of guilty.

The defendant assigns as error:

(1) The refusal of the trial court to allow him to withdraw his plea of guilty upon his request at the time of the pronouncement of sentence;

(2) The order of the lower court denying his subsequent written motion for leave to withdraw his plea of guilty;

(3) The failure of the lower court to hold a hearing on the subsequent written motion; and

(4) The refusal of the lower court to appoint counsel to prosecute on behalf of the defendant the subsequent written motion.

Our threshold questions are whether the court erred in refusing to grant the defendant a hearing on his written motion for leave to withdraw his plea of guilty and whether the lower court erred in refusing to appoint counsel to prosecute the motion on behalf of the defendant. Until we dispose of these issues, our consideration of whether the lower court abused its discretion in ruling on the merits of the motions would be premature.

Respecting the question of whether the trial court should have held a hearing on the motion, the defendant does not contend that in every case where such a motion is filed, a hearing on the merits thereof is required. Such a contention would, of course, be lacking in merit, for it would be an unreasonable and unjustifiable burden upon the state to require a hearing on all motions to withdraw pleas of guilty, regardless of how patently frivolous. The defendant does contend, however, that a hearing should have been held in the present case. He argues that the affidavits of the defendant's two cellmates, to which reference was made above, were not controverted by the State's affidavits and that thus the allegations therein

must be assumed to be true. The chief difficulty with that argument is that it is based upon an incorrect factual premise. It is difficult to imagine how the threats against the defendant's life, as alleged in the two affidavits of the defendant's companions, could be more specifically controverted than through the sworn statement of Mr. Nicholson that "he has never made any threats of any kind or manner that would put defendant in fear of his life; * * *."

Furthermore, even if the affidavits of the defendant's cellmates were not controverted, we would be disinclined to read an abuse of discretion into the failure of the lower court to hold a hearing on the motion. In the first place, we do not agree with the defendant that all uncontroverted assertions of fact must be assumed to be true for the purpose of determining whether a post-conviction hearing must be granted. Certainly, all such assertions must be weighed within the framework of the surrounding circumstances. See In re LeRoy H. Jones Petition, 143 Mont. 19, 386 P.2d 747 (1963). The defendant relies upon State v. McAllister, 96 Mont. 348, 30 P.2d 821 (1934), in support of the proposition that unopposed affidavits must be assumed to speak the truth. However, that case involved affidavits of the defendant, his counsel, and his father, all of which were in harmony with each other and with all of the circumstances surrounding the case. Thus we do not treat State v. McAllister, supra, as setting forth the inflexible rule urged by the defendant, although we do agree that unopposed affidavits are entitled to great weight in determining whether a hearing should be granted. Ultimately, much latitude must be given to the discretion of the trial judge, who has a first hand acquaintance with the circumstances of the case, the defendant, and, in many cases, the affiants relied upon by the defendant to bolster his cause.

Even assuming that the affidavits in question reflect the true facts, and that they were uncontroverted, they do not, when considered with reference to other circumstances, make

out such a strong case for a hearing that the failure to grant the same was an abuse of the discretion. As stated above, the defendant's motion is devoid of any allegation that he was, in fact, put in fear by the threats of Mr. Nicholson or that such fear induced a guilty plea. Moreover, it is highly improbable that a man would plead guilty to felony carrying a penalty of from one to fifteen years imprisonment under the inducement of the alleged threats in question. That is particularly true of this defendant, to whom crime in general, and prison life in particular, are not strangers.

The foregoing considerations, plus the failure of the defendant to mention to the trial judge that he had plead guilty while under the inducement of threats upon his life, in spite of the fact the judge told him he would allow a withdrawal of the guilty plea if the defendant had a valid reason, constrain us to the view that the failure of the trial judge to grant a hearing on the motion was not an abuse of discretion.

We turn now to the question of whether the defendant's constitutional rights were abridged by the refusal of the trial judge to assign him a lawyer to urge his motion.

In support of his contention that his constitutional rights have been violated, the defendant argues that by alleging an involuntary plea of guilty, he alleges, in effect, that his conviction was invalid, and that he thus stands in the position of an accused who has not yet been brought to trial. Consequently, says the defendant, the rule of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which holds that the Fourteenth Amendment requires counsel to be appointed to represent, at the trial stage, indigent defendants charged with felonies, is dispositive of the question of whether the defendant in the instant case should have had appointed counsel to urge his motion. We disagree, because of the obvious difference between a trial on the merits and a hearing based upon an allegation that an existing conviction is invalid. A conviction, either upon a plea of guilty or upon a verdict of

guilty, signifies a completed trial, and the mere allegation that the conviction is invalid does not, ipso facto, nullify the legal effect of the trial and conviction. If the allegation is withdrawn, or fails for lack of proof, the trial and conviction stand as legally operative facts. Thus, Gideon v. Wainwright, supra, does not in our opinion, answer the question of whether the United States Constitution requires the appointment of counsel to urge the post-conviction motion under consideration.

The answer lies in Douglas v. California, 372 U.S. 353, 9 L.Ed.2d 811, 83 S.Ct. 814 (1963), which was decided the same day as Gideon v. Wainwright, supra, the Supreme Court of the United States held that the Constitution requires the appointment of counsel to represent a convicted indigent defendant during the post-conviction appeal accorded a defendant as a matter of right by the California law. However, the United States Supreme Court expressly left open the question of whether a state must appoint counsel for an indigent defendant for any post-conviction procedure other than "the *first appeal,* granted as a matter of right to rich and poor alike * * *." Because the Supreme Court itself, which must conform to the requirements of the Fifth Amendment due process clause, does not appoint counsel for all convicted indigent persons who apply to it for relief (see dissenting opinion of Mr. Justice Clark and of Mr. Justice Harlan, joined by Mr. Justice Stewart in Douglas v. California, supra), we are of the opinion that Douglas v. California must be treated as announcing a constitutional principle limited strictly to the type of post-trial proceeding with which the Court was there concerned.

We will next consider the contention that the lower court abused its discretion in refusing to permit the defendant to withdraw his plea of guilty while he was in the presence of the trial judge immediately after sentence was pronounced. The defendant argues that he pleaded guilty in "ignorance, misapprehension and mistake" because of his erroneous theory

that the judge would place him in double jeopardy by considering his prior criminal record in assessing an appropriate sentence. We are of the opinion that the nature of the defendant's misapprehension was not such as to render the lower court's finding that his plea was voluntary an abuse of discretion. The defendant was correctly informed by the judge that upon a plea of guilty he would receive a sentence of from one to fifteen years, and he was given no promises by anyone concerning what his sentence would actually be. When a man with a long criminal record admits his guilt under these circumstances, we fail to discover the remotest possibility that he may have pleaded guilty to a crime he did not commit. Indeed, he does not even now allege that he has a valid defense to the charge.

The fundamental purpose of allowing the withdrawal of a plea of guilty is to prevent the possibility of convicting an innocent man. Therefore, a plea of guilty need be deemed involuntary only where it appears that the defendant was laboring under such a strong inducement, fundamental mistake, or serious mental condition that the possibility exists he may have pleaded guilty to a crime of which he is innocent. Compare the facts of the instant case with those of State v. Morgan, 131 Mont. 58, 307 P.2d 244 (1957); State v. McBane, 128 Mont. 369, 275 P.2d 218 (1954); State v. Dryman, 125 Mont. 500, 241 P.2d 821 (1952); State v. Casaras, 104 Mont. 404, 66 P.2d 774 (1937); State v. McAllister, 96 Mont. 348, 30 P.2d 821 (1934); State ex rel. Foot v. District Court, 81 Mont. 495, 263 P. 979 (1928). In the present case we find no abuse of discretion in the refusal of the lower court to allow the defendant to withdraw his plea of guilty at the time the sentence was pronounced.

The only question remaining is whether the lower court abused its discretion in denying the defendant's subsequent written motion for leave to withdraw his plea of guilty. Earlier in this opinion we concluded that the failure to accord the de-

fendant a hearing on the motion was not an abuse of discretion because the motion and attached affidavits, when considered in the light of the State's counter affidavits and the surrounding circumstances, did not present a strong enough case for a hearing. The same considerations lead us to the conclusion that the lower court's disposition of the motion on its merits was not an abuse of discretion. Therefore, rather than unduly prolong this opinion, we shall conclude our discussion of the present issue with a reference to what has been said above concerning the related question of whether a hearing on the motion should have been granted.

Th judgment and order appealed from are affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, ADAIR and DOYLE concur.