No. 12784

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

FREDDIE STARR GRIFFIN,

Defendant and Appellant.

———————

Appeal from:  District Court of the Eighth Judicial District,
Honorable Paul Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Dennis Conner argued, Great Falls, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Carl J. Kraft argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana
Michael T. Greely, appeared, Deputy County Attorney,
Great Falls, Montana

———————

Submitted:  January 14, 1975

Decided: MAY - 6 1975

Filed: MAY 3 1975

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of conviction for the sale of dangerous drugs entered in the district court, Cascade County.

Defendant Freddie Starr Griffin was charged in the district court on August 31, 1973, on Count I with the crime of the sale of dangerous drugs and on Court II with assault on a juvenile boy with the intent to commit a felony, to-wit: Infamous crime against nature. Court appointed counsel appeared with defendant and he was arraigned before Hon. Truman Bradford on September 5, 1973. A plea of not guilty was entered and trial was set for September 24, 1973 at the hour of 9:30 a.m.

The state on September 10, 1973 filed notice of intent to seek increased punishment pursuant to section 95-1506, R.C.M. 1947, as a prior convicted felon pursuant to section 94-4713, R.C.M. 1947. The state listed 8 prior convictions of robbery and burglary in the states of California, Nevada and Montana on which defendant was sentenced to prison on 6, and given probation on 2. The 1957 Montana robbery conviction indicates a ten year sentence at Deer Lodge, Montana. On September 19, 1973 defendant filed pro se three handwritten motions in good and acceptable form with the court: (1) That the $25,000 bail was excessive and he, being of Indian blood and poor, suggested bail of $10,000 to uphold the fairness of the court to all concerned. (2) That defendant's court appointed attorney be dismissed. That defendant is to retain counsel of his choice, alleging it imperative the request be granted as soon as possible because he had been in custody four weeks and had had one court appearance with the court appointed counsel. (3) A motion to disqualify Judge Bradford on the grounds that various sources had informed him that Hon. Bradford is prejudiced against Indians and defendant is an American Indian; that Judge Bradford be dismissed from the

case, with no disrespect, but only as a well intentioned request.

Hon. Truman Bradford heard the motions on September 19, 1973. The court granted defendant on an order to show cause until September 21, 1973 to hear the motion for disqualification of the judge for actual bias; the court further gave defendant until September 20, 1973, at 5 p.m., to notify the court as to whether he had retained his own counsel. On September 21, 1973, Hon. Paul Hatfield, sitting for Judge Bradford, and defendant appearing with original court appointed counsel, granted the motion for substitution of counsel, a public defender, as defendant had no funds for private counsel. The remaining two pro se motions were not acted on and were stricken at that time; the court ruling defendant would have to act through counsel. Hon. Robert Nelson heard the motion to disqualify Hon. Truman Bradford for bias on September 21, 1973, defendant appeared in court with the second public defender. Motion was denied and trial reset for November 26, 1973. On September 26, 1973, new counsel filed disqualification of Judge Bradford under the statute. Judge Paul Hatfield accepted jurisdiction on September 28, 1973 and on the same day Judge Hatfield reduced bond to the sum of $2,000. The bond was approved October 15, 1973, and defendant was released.

New counsel filed and argued a motion to suppress evidence which the court denied on November 28, 1973 after briefs had been filed. Meantime, the November 26, 1973 trial date had been vacated. On December 5, 1973, trial date was set for January 14, 1974. On December 10, 1973, motion was filed by second court appointed counsel to be relieved as counsel, at defendant's request. Defendant appeared with paid counsel on December 12 and the court granted the motion for the public defender to withdraw. Paid counsel then, on January 7, 1974 on constitutional grounds, filed motions for dismissal and continuance. On

- 3 -

January 10, 1974 hearing was had, the motions denied, and trial reset for January 15, 1974.

On January 14 defendant, with paid counsel, moved the court to withdraw the plea of not guilty to the charge of sale of dangerous drugs and enter a plea of guilty. Court set the date for sentencing as February 14, 1974, to allow time for pre-sentence investigation. Defendant continued on bond.

On February 14 defendant's paid counsel appeared with a deputy county attorney but defendant failed to appear and a bench warrant of arrest was issued. Defendant was later arrested in California, returned to Montana, and appeared with paid counsel on March 27, 1974. The court granted defendant's motion to continue sentencing until April 3, 1974 at 2 p.m. On April 3, 1974, at 11:40 a.m. defendant filed pro se a 5 page handwritten motion and brief to withdraw his guilty plea and requested he be given ample time to retain another attorney and prepare for trial. His motion was aimed generally at his paid counsel. He alleged he was coerced and threatened by his paid counsel and the deputy county attorney with imprisonment of lengthy "endurance"; that he was forced to change his plea to guilty in the first instance; that he was promised a term of six months in the county jail for his plea,and the dismissal of the assault charge and petition for increased punishment. The trial judge, Hon. Paul Hatfield, heard the motion at 2 p.m. that day, April 3, 1974, denied the motion to withdraw defendant's plea, and pronounced sentence, i.e. ten years at hard labor. He further granted paid counsel's request to be relieved of further obligation as counsel and appointed the public defender as counsel for defendant for appeal.

On April 5, 1974 the state moved for, and was granted, dismissal of the remaining charges against defendant. Judge Hatfield granted a petition by defendant (through counsel) to proceed with an appeal in forma pauperis and that he be furnished a transcript. Counsel filed notice of appeal on behalf of defendant.

In the meantime, defendant proceeded pro se with a handwritten 5 page motion to vacate the sentence of the trial court which he based, in the main, on alleged: undue influence by people who were financially involved when he violated his bond agreement; lack of assistance at sentencing; threats by the deputy county attorney; and general VIP pressure by people of great influence and prestige. A separate motion was filed requesting a "specific" attorney by name to replace the attorney assigned to him by the court. Defendant was assigned new counsel who appears on this appeal in his behalf but he is not the counsel designated in his pro se motion to the trial court.

Two issues are presented to this Court for review:

1. Did the district court err in accepting defendant's plea of guilty without first determining that the plea was made voluntarily and with an understanding of the charge?

2. Did the district court err in denying defendant's motion to withdraw his plea of guilty?

Defendant alleges the court erred in accepting his plea of guilty without first determining if the plea was made voluntarily and with an understanding of the charge. Defendant plead guilty on January 14, 1974 to the charge of sales of dangerous drugs before district judge Hon. Paul Hatfield. Defendant alleges that at the time the judge did not advise him of his rights nor of the possible sentence he could receive resulting from his plea of guilty. Defendant cites two statutes which he relies upon to support his argument. (1) Section 95-1606, R.C.M. 1947, which reads in pertinent part:

> "Procedure on arraignment. The arraignment in any court in this state must be conducted in the following manner:
>
> "* * *
>
> "(e) * * * The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge."

(2) Section 95-1902, R.C.M. 1947, which reads:

"Plea of guilty. Before or during trial a plea of guilty may be accepted when:

"(a) the defendant enters a plea of guilty in open court; and

"(b) the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea.

"At any time before or after judgment the court may for good cause shown permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

At the outset, we note the two statutes cited to the Court and heretofore quoted. Each is properly identified and is designed to control its own specific function in the criminal procedural process. If it were otherwise, we would not have two statutes on the same subject matter. It would appear from the record here that we are only concerned with section 95-1902, R.C.M. 1947.

Defendant points out that section 95-1902, R.C.M. 1947, was taken from the Illinois Code of Criminal Procedure, Chap. 38, section 115-2, and cites People v. Washington, 5 Ill.2d 58, 124 N.E.2d 890, as support for his proposition that the judge must inform the defendant of his rights and the consequences of a guilty plea before he can accept a guilty plea from defendant.

In Washington the record did not contain a statement by the court advising defendant, who was represented by counsel, of the effect of his plea of guilty to the charge of murder. The judgment was reversed and remanded on the basis of Illinois Revised Statutes 1953, Chap. 38, par. 732, which states:

"In cases where the party pleads 'guilty', such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persists in pleading 'guilty', such plea shall be received and recorded, and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury."

- 6 -

It was also reversed and remanded on Court Rule 27A (Ill. Rev.Stat. 1953, Chap. 110, par. 259.27a) which provides in part:

> "The inquiries of the court, and the answers of the defendant to determine whether the accused understands his rights to be represented by counsel, and comprehends the nature of the crime with which he is charged, and the punishment thereof fixed by law, shall be recited in, and become a part of the common law record in the case * * *."

Montana does not have a similar rule to the Illinois Rule 27A nor a statute similar to Ill.Rev.Stat.1953, Chap. 38, par. 732. Their combined effect is different than Montana's section 95-1902, R.C.M. 1947. Therefore <u>Washington</u> is not applicable here.

> In his brief, defendant calls to the Court's attention:
>
> "It is important to note at the outset that <u>two affidavits appear in the Court file, presently before the Supreme Court</u>, wherein Petitioner has submitted a motion to vacate his sentence and a motion to withdraw his plea of 'guilty'. Until these affidavits are opposed by counter affidavits, <u>everything must be assumed as true which is contained therein</u>. State v. McAllister, supra, at 353." (Emphasis added)

A review of these two pro se motions demonstrates they are not affidavits and are not verified or sworn to in any respect. A review of the entire court file discloses defendant's earlier pro se pleadings were sworn to before deputy sheriff Richard W. Donovan, a notary public, indicating that the opportunity to present affidavits was available to persons confined in the Cascade county jail. In any case State v. McAllister, 96 Mont. 348, 353, 30 P.2d 821 (1934), no longer controls on that point in those absolute terms since this court's decision in State v. Pelke, 143 Mont. 262, 268, 389 P.2d 164, which stated:

> "* * * we do not treat State v. McAllister, supra, as setting forth the inflexible rule * * *. Ultimately much latitude must be given to the discretion of the trial judge, who has a first hand acquaintance with the circumstances of the case * * *."

<u>Pelke</u> reached the fundamental purpose of these rules:

> "* * * a plea of guilty need be deemed involuntary only when it appears that the defendant was laboring under <u>such a strong inducement, fundamental mistake, or serious mental condition, that the possibility exists he may have pleaded guilty to a crime of which he is innocent.</u>" (Emphasis added).

Defendant cites Boykin v. Alabama, 395 U.S. 238, 239, 89 S.Ct. 1709, 23 L ed 2d 274, for the proposition that a guilty plea cannot be presumed to be voluntary where:

> "So far as the record shows, the [trial] judge asked no questions of [defendant] concerning his plea, and [defendant] did not address the court."

Defendant alleges the trial court must employ the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has full understanding of what the plea connotes and of its consequences.

In Boykin the court set down three areas of inquiry (1) self-incrimination, (2) right to trial by jury, and (3) right to confront accusers. Defendant in the instant case argues that these procedural steps announced in Boykin are mandatory in all cases under any conditions.

In a case tried in the Cascade County district court, State v. Wilkins, a murder case, a plea change was involved during trial. Wilkins filed a writ of habeas corpus in the federal district court, Great Falls Division, Civil No. 3167, 30 St.Rep. 1207, and an evidentiary hearing was held on the question: Is a guilty plea voluntarily and intelligently made under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L ed 2d 274 (1969) and cases following, if the defendant at the time of pleading guilty is not specifically advised by the State court judge that by pleading guilty he will waive his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers?

The federal district court in denying the petition on December 20, 1973, determined that the particular language in Boykin was merely advisory and concluded that a plea could be voluntarily and intelligently made without specific articulation of the three Boykin rights, as long as the court passing on the application for a writ, be able to find from the whole record before it, without aid of presumptions, that a plea of guilty was voluntarily made.

- 8 -

On November 6, 1974, the Ninth Circuit Court of Appeals, by opinion, Wilkins v. Erickson, 505 F.2d 761, 763, affirmed the federal district court. After setting out the legal question concerning the three areas of inquiry in Boykin, the Court observed:

"Wilkins relies on the following language from Boykin:

"'We cannot presume a waiver of these three important federal rights from a silent record.'"

Then the court pointed out that Boykin involved an arraignment on five counts of robbery and the court asked no questions, and the defendant did not address the court---the record was silent. The court went on to say:

"The district court's decision, however, is supported by Supreme Court decisions subsequent to Boykin and several circuits. The rigid interpretation of Boykin urged by Wilkins has not been adopted by the Supreme Court in subsequent decisions on voluntariness of guilty pleas. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, (1970), the Court citing Boykin, upheld a guilty plea as voluntary and intelligent even though defendant had not been specifically advised of the three rights discussed in Boykin. The Brady Court clarified Boykin by stating, '[t]he new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' 397 U.S. at 747-748 fn.4. 90 S.Ct. at 1468. In North Carolina v. Alford, 400 U.S. 25,31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the Court stated that in determining the validity of guilty pleas the 'standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' Specific articulation of the Boykin rights is not the sine qua non of a valid guilty plea.

"* * *

"The Ninth Circuit has apparently not passed on the question. Accordingly, we hold that Boykin does not require specific articulation of the above mentioned three rights in a state proceeding. Brady v. United States, 397 U.S. at 747-748 * * * and cases supra." (Emphasis added).

In the instant case, the entire record before us from arraignment on the drug charge in the justice of the peace court, arraignment in the district court on the multiple charges, the participation pro se by defendant throughout the entire record, and the discharge of counsel each time it appeared the case would

be brought on for trial, together with the repeated references to "plea bargaining" each time, would indicate that the guilty plea was entered with full understanding of the charge, voluntarily made and with full appreciation of his constitutional rights and possible penalty, without indulging in presumptions. Certainly a more in depth examination by the court is desirable and mandatory in cases where the record requires it. Each case must be examined on its own record and in the instant case the fact that the court did not specifically articulate at the time of the plea change on the matters contained in section 95-1902(b), R.C.M. 1947, does not amount to reversible error.

Defendant's second issue on review concerns the failure of the trial judge to permit defendant to withdraw his pleas of guilty on the day set for sentence, April 3, 1974, based on pro se motions filed that day/amount to a vitriolic attack on his heretofore set forth, Those motions paid counsel, the deputy county attorney, and the trial judge and a pleading of proof of his innocence as the result of a polygraph examination, administered by the authorities; and proclaiming he had been promised a six month county jail term in exchange for a plea of guilty to possession of drugs.

Defendant at this point had suffered a considerable erosion of his credibility. The trial judge was in possession of the presentence investigation containing the results of the polygraph examination, which, just to demonstrate lack of credibility, is reported here to contain the opinion of the operator that defendant did give marijuana to the victim, did force the victim to remove clothes and did force victim to have sex. Additionally, the paid counsel and the deputy county attorney, both competent and credible officers of the court, denied these allegations in open court as they pertained to them individually and to the circumstances generally asserted by defendant.

The record does indicate there were three separate times the state was ready for trial and each time new counsel was obtained and defendant entered into plea bargaining, all at the request of defendant. The trial judge admits he was agreeable to a lighter sentence to avoid exposing the juvenile boy to the public view on the trial of the sex crime. No one but defendant ever mentioned a reduction in sentence to six months in the county jail. The maximum exposure on conviction of the two crimes charged with the petition for increased punishment could be two life sentences. At sentencing the judge asked defendant if he would like to testify in his own behalf and received this response:

> "MR. GRIFFIN: Well, your honor, I haven't discussed any situtation of sentencing with my family, because they are under the impression, just like me, that I would get a break in a white man's court -----

> "THE COURT: You have had lots of breaks in this case-----

> "MR. GRIFFIN: But I am not going to get no break in a white man's court, I can see that, anyway, because I am an Indian, and you are wrong, and I was wrong in my impression, and that's all I can say about the whole thing.

> "THE COURT: You don't wish to present any further testimony with regard to mitigation of sentence?

> "MR. GRIFFIN: There isn't anything else that would help, because everybody else has their mind made up against me."

The trial judge imposed a ten year sentence. The state dismissed all remaining charges against defendant. The entire argument based on the record must be the connotation of "light sentence". The trial judge has complete discretion in this matter, section 95-2206, R.C.M. 1947, and must have felt that "light" is viewed in relation to "possible". Viewed in this context we do not find an abuse of discretion. As this Court stated in State v. Nance, 120 Mont. 152, 166, 184 P.2d 554:

> "It will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof."

See also: State v. Scalise, 131 Mont. 238, 309 P.2d 1010.

The judgment of the district court is affirmed.

_____
                 Justice

We Concur:

_____
     Chief Justice

_____

_____

_____
     Justices.

- 12 -