No. 87-105

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA

Plaintiff and Respondent,

vs

DANNY ARTHUR ARLEDGE,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Honorable Mike Greely, Attorney General,
Patricia J. Schaeffer, Assistant Attorney General,
Helena, Montana
Ted. O. Lympus, Flathead County Attorney,
Kalispell, Montana

For Respondent:

MOORE and DORAN; Gary G. Doran, Kalispell, Montana

---

Submitted on Briefs: August 13, 1987

Decided: August 26, 1987

Filed: AUG 26 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Danny Arthur Arledge appeals from the order of the District Court, Eleventh Judicial District, Flathead County, denying his motion to withdraw his guilty plea and to vacate the sentence imposed on him under his former guilty plea.

The principal grounds relied upon by Arledge to withdraw his guilty plea are that he was improperly represented by counsel or lied to by counsel; that he was coerced by his detention officers by threats to plead guilty; that when he entered his plea of guilty before the District Court, he was not properly advised by the court of lesser-included crimes with which he could be convicted; and, in essence that his guilty plea was involuntary and without adequate knowledge of his rights. The record shows that Arledge's contentions are completely weightless. We affirm the District Court's refusal to allow withdrawal of Arledge's guilty plea.

On October 28, 1986, Arledge approached Katrina Keiger in Kalispell while she was parking her car and demanded her car keys. She refused and Arledge entered her car firing a .38 caliber revolver. Keiger began screaming and when Arledge got out of the vehicle, he pointed the revolver at her and fired again. The bullet entered the back of her neck, severed the sub-clavical artery and vein and exited through her left breast. Arledge took her wallet and fled.

Less than a half hour later, Arledge entered the residence of Brenda Miller of Kalispell, pointed a handgun at her and demanded the keys to her automobile. He forced her to lie on the floor, threatened her, took her keys and $10 from her purse. He fled in her 1977 Mercury automobile.

Later, at a road block on U.S. Highway No. 2, in Lincoln County, Montana, Arledge was arrested while traveling in a vehicle as a hitchhiker west from Kalispell. At the time of the arrest, officers found on his person a .38 caliber handgun.

Arledge was charged with attempted deliberate homicide, robbery and aggravated burglary on November 1, 1985. Steven J. Nardi, an attorney in Kalispell, was appointed to represent the defendant. The court required a psychiatric evaluation of Arledge in which it was found that though Arledge had a borderline personality disorder with antisocial traits, a history of drug and alcohol abuse, and epilepsy, he was nevertheless competent to assist in his defense and had the ability to comprehend the nature and effect of a guilty plea.

Arledge entered a plea of not guilty on January 16, 1986, but at that hearing, requested the court to appoint new counsel for him. Arledge contended that Nardi had a conflict of interest, was acting incompetently in his case, and was working with the county attorney's office against his interests. The court reviewed with Arledge each of his allegations, and after discussion, Arledge indicated his desire for Nardi to remain as his attorney.

Other procedures occurred before the District Court, not important in this discussion, but on April 25, 1986, Arledge came into court to enter a plea of guilty on all counts. His counsel, Steven Nardi, took the position before the court and in the presence of the defendant that Nardi opposed the entry of the guilty plea by the defendant and advised Arledge on the record that Nardi was seeking a pretrial agreement or plea bargain with the State. Arledge nevertheless persisted in entering a guilty plea.

- 3 -

At the entry of the guilty plea, the court interrogated the defendant and established that he was satisfied with the services of his attorney; that Arledge was not under the influence of drugs or alcohol or suffering from mental or emotional disability; that he understood his right to trial by jury, his right to confront and cross-examine witnesses, his right to counsel, his right to remain silent and his right to appeal; that Arledge understood his plea of guilty resulted in a waiver of those rights; that he was not relying on any promises nor had he been threatened or "coerced"; that the defendant was aware of the maximum penalties on all charges plus additional penalties for the use of a firearm and persistent felony offender status, plus the possibility that the sentences could be consecutive; that Arledge understood that a jury might find him guilty of lesser-included offenses; that he understood the conseqences of having a felony record; that he was abandoning his defense of mental disease or defect; that he understood the substance of the charges against him and believed he was guilty of the offenses; further Arledge admitted shooting Katrina Keiger, threatening Brenda Miller and stealing her car; he also understood he was acting against the advice of his own counsel. It is enough to say at this point that the extensive examination of the defendant by the District Court at the time of his entry of plea meets the standards set by this Court in State v. Lewis (1978), 177 Mont. 474, 485, 582 P.2d 346, 352.

On May 21, 1986, defendant appeared before the court for sentencing. His testimony and that of his witness was primarily directed at his mental condition while the State's evidence was primarily focused on the ordeal of the victim, Katrina Keiger.

Arledge was sentenced to 40 years imprisonment for the crime of attempted deliberate homicide, 20 years imprisonment for the crime of robbery, and 20 years imprisonment for the crime of aggravated burglary, all to run concurrently. In addition, he was sentenced to 5 years imprisonment for the use of a dangerous weapon and an additional 5 years as a persistent felony offender, both additional sentences to run consecutive to other sentences imposed. He was designated a dangerous offender for the purposes of parole eligibility.

On July 14, 1986, Arledge filed a motion to withdraw his plea of guilty to all charges. Gary C. Doran was appointed to replace Nardi as counsel for Arledge and a hearing was held before the court on the motion to withdraw the plea on December 12, 1986. The District Court denied his motion and Arledge appeals.

We look first at the contentions made by Arledge against his attorney Nardi. At the motion to withdraw his plea of guilty, Arledge testified that he was not advised by Nardi of certain charges that were pending against him in Missoula County, including arson, burglary, forgery and a potential probation violation. Arledge contended that had he been aware of these charges he would have instructed Nardi to contact the Missoula County Attorney's Office to seek a combined intercounty agreement that would cover all outstanding criminal charges against him. Arledge contended he was not advised of these charges in Missoula until May 21, 1986, after he had already been sentenced.

Arledge was countered in this contention by the evidence of the supervising detention officer, Theodore Stohlfuss, that a warrant for his arrest from Missoula County was served on Arledge on January 17, 1986, by Officer Joe Morin. Nardi testified that there was a discussion of these charges with Arledge in January and February, 1986.

Arledge contends that on his motion to withdraw his plea of guilty, Nardi advised him to "make sure when he got up there on the stand . . . if it was your idea to plead guilty, make sure the judge understands it was your idea to plead guilty." Arledge construes this language to mean that he should get on the stand and lie about the charges against him. We cannot and do not read that into the statement attributed to Nardi. Arledge further contends that at his sentencing hearing, Nardi failed to call the detention witnesses Bruce Hoffman, Joe Morin, and Kent Potter, who, if they had testified, would have recited threats against Arledge which resulted in his plea of guilty. Arledge makes the argument that if at the sentencing hearing, the District Court had heard testimony from these witnesses, it would have found his guilty plea unacceptable, and reset the matter for trial. We will discuss the purported threats hereinbelow, but negligence cannot be attributed to his attorney because the attorney failed to call witnesses at the sentencing hearing whose testimony would result in a setting aside of the guilty plea. That contention is inconsistent with Arledge's action in voluntarily pleading guilty against the advice of his attorney.

Arledge also points to a letter he received from Nardi dated March 13, 1986, in which Nardi outlined for Arledge the legal situation facing him and the possible sentences that he might receive. The essence of the letter from Nardi to Arledge was to the effect that it would be a very "foolish move not to take the State's offer to plea bargain." The letter is in effect advice to Arledge to seek a plea bargain; Arledge decided against the advice of counsel not to plea bargain. Now, Arledge uses the letter to say that his attorney was threatening him to plead guilty. This contention is nonsensical.

With respect to assistance by counsel, before such assistance will be found ineffective, Arledge must show that Nardi's performance was deficient and prejudicial to the extent that except for Nardi's purported unprofessional errors, the result of the proceedings here would be different. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Boyer (Mont. 1985), 695 P.2d 829, 831, 42 St.Rep. 247, 250. Arledge's contentions against Nardi do not begin to meet this standard.

Arledge also contends that Nardi did not attend his client's concerns with the devotion required of an attorney, that he visited Arledge only five or six times over the course of a five month period, that he failed to provide Arledge with books or statutes to enable him to understand the proceedings in the case and that Nardi was unresponsive to Arledge's request for certain motions to be filed. In the light of the record that Arledge entered a guilty plea against the advice of his own counsel, there is no substance to these contentions.

Arledge also contends that his guilty plea was prompted by threats received while being incarcerated in the county jail.

Here, Arledge contends that on February 4, 1986, a detention officer came to his section of the county jail with a German shepherd dog and threatened the defendant by stating, "See this dog? He'll chew you up and spit out your hearing aid." In addition, an officer told the defendant that "life is a bitch and you are going to die." Also, statements were made that the officers would attend his funeral and his next home would be "Memorial Gardens." Arledge wrote about these threats to Chief Justice Turnage of this Court on February 4, 1986; to Kalispell Mayor Ed Kennedy; and in a complaint and witness statement made to

Detective Hossack on February 26, 1986. Also, Arledge contended that a detention officer had supplied him with a handcuff key, which he turned over to his attorney Nardi; that the purpose of giving Arledge the handcuff key was to encourage him to attempt to escape and that Arledge would be gunned down in the attempt. It also appears that Arledge was removed from the Flathead County Jail prior to his entering a guilty plea, and that he was held in the Kalispell City Jail for ten days to two weeks. Arledge was returned to the county jail on his own demand and no further threats were reported for the remaining two months prior to his plea.

At the time of the entry of his guilty plea, Arledge was interrogated on this point and stated:

Q. And again, nobody here today has coerced you or threatened or promised you anything by pleading guilty; have they? A. No.

Q. And I include in that anybody at the Sheriff's Office. Have they been threatening you or making you do this? A. Oh, under the circumstances, your Honor, not threatening me to get me to plead. But, you know, emotionally and mental punishment, yeah, I would say yes.

Q. What kind of emotional and mental punishment would that be? A. Oh, threats and so forth.

Q. From the officers? A. Yes. Not the officers. The detention officers.

Q. The detention officers. What have they said to you? A. Well, what have they said to me? Well, they made verbal threats against my life. They have took the privileges away from me which was considered privilege, you know. They have done other things. You know, they have mentally petered my brain down.

Q. Is that the reason you are pleading guilty here today? A. No, it is not the reason.

Q. I am concerned that I don't want to have you feel that somebody is forcing you to plead guilty, because we certainly don't want that. I want you to plead guilty only because you want to. A. I want to.

Q. And are you telling the Court that anything that has happened over there has not caused you to enter the plea of guilty today? A. No.

Q. You don't like what they have done to you? A. No, I don't like what they done to me, no.

Q. But that is not the reason for the plea? A. No.

Q. Anybody else that you feel may have coerced you or threatened you? A. No.

In contravention to the contention that the threats of the detention officers coerced his guilty plea, the affidavit of his attorney, Nardi, showed:

Shortly before April 25, 1986, the next regularly scheduled court appearance in this case, the Defendant advised your Affiant that he was going to go into Court on the 25th of April and plead guilty to all charges pending against him, without the benefit of a plea disposition agreement or negotiations of any kind with the Flathead County Attorney's Office. Your Affiant advised him repeatedly that this was not in his best interests and that if he was contemplating a plea, then he should let your Affiant work out the details of a plea bargain agreement to reduce his maximum exposure for sentencing purposes. The Defendant would not listen to counsel at all in that regard. He stated on numerous occasions that he wanted to plead guilty to all charges "so he could watch it blow the D.A.'s mind." Another reason offered by the Defendant for wanting to enter pleas of guilty to all charges was that he wanted to hurry up and get to the Montana State Prison to see his friends and get settled in.

At the hearing on the motion to withdraw his guilty plea, the court required the attendance of one of the

detention officers, Bruce Hoffman, who testified that he knew of no threats against the defendant and that in fact, the defendant, after he had stopped taking his medication, had become violent against another cellmate. The District Court specifically found that no threats existed which coerced the guilty plea. Finally, the record shows that at the hearing when Arledge entered his plea of guilty, the court was careful to tell him that if he went to trial, there existed a possibility that he could be found not guilty, or that he could be found guilty of a lesser-included offense. The defendant stated that he understood this and that nevertheless, he wanted to enter his guilty plea.

The record in this case is replete that the defendant Arledge was fully accorded his rights as one charged with criminal offenses and that he voluntarily determined to enter a plea of guilty. Not only are his contentions weightless, but there is not the slightest doubt in the record that he committed the crimes with which he was charged and that the sentence imposed upon him by the District Court for those crimes was proper in the circumstances. The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent man. State v. Pelke (1964), 143 Mont. 262, 271, 389 P.2d 164, 169. A district court may permit withdrawal of a guilty plea only for good cause shown. Section 46-16-105(2), MCA.

The order of the District Court denying withdrawal of the Arledge's guilty plea was proper and we affirm.

_____
John C. Sheehy
Justice

We Concur:

- 10 -

_____

Chief Justice

_____

_____

_____
Justices