No. 91-046

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GARY EUGENE RADI,

Defendant and Appellant.

FILED

OCT - 8 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Gary Eugene Radi, Pro Se, Deer Lodge, Montana.

        For Respondent:

            Hon. Marc Racicot, Attorney General, Helena,
            Montana;    Jennifer Anders, Assistant Attorney
            General, Helena, Montana;  Robert Deschamps, III,
            County Attorney, Missoula, Montana;  Betty Wing,
            Deputy County Attorney, Missoula Montana.


                        Submitted on briefs:  June 28, 1991,

                                Decided:  October 8, 1991

Filed:

_____
              Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant Gary Eugene Radi pled guilty to two counts of burglary before the District Court of the Fourth Judicial District, Missoula County, on April 9, 1990. On May 22, 1990, the Honorable Jack L. Green, District Court Judge, sentenced defendant to 20 years in the Montana State Prison on each count, the two terms to run consecutively. Defendant, appearing pro se, made a motion before the District Court on October 3, 1990, to withdraw his guilty plea. Defendant appeals from the District Court's order of November 29, 1990, denying his motion to withdraw the guilty plea. We affirm.

The sole issue before this Court on appeal is whether the District Court erred in denying defendant's motion to withdraw his plea of guilty.

Between the hours of 5 p.m. on November 21, 1989, and 6:20 a.m. on November 22, 1989, 2J's Produce in Missoula was unlawfully entered. Once inside 2J's Produce, the individuals gained entrance to an adjacent business, A & I Distributing. Various items, including a VCR recorder, a radio, a safe, a number of chain saws, an acetylene cutting torch, a 2J's Produce van, and a variety of food items, were stolen from both premises.

On November 22, 1989, a confidential informant gave the police information concerning the burglaries. The informant told the police that three individuals were involved in the burglaries and gave the police additional details concerning the crimes. He

2

identified one of the participants as an individual recently released from the Montana State Prison, known to him as "Dan." He gave police a description of the individual, as well as his address. With this information, and the assistance of the Adult Probation and Parole Office, the individual was identified as Dan Gochanour by the police. The informant said the second individual involved was "Big Brad." He related that Big Brad was an ex-convict and gave police a detailed description of the man. Police checked with personnel at the Life Skills Center in Missoula who indicated that Brad Eisenman was known to them as Big Brad and that he fit the description given by the informant. The informant did not know the identity of the third individual involved.

Information by this informant also led the police to an individual named Monte Anderson. On November 28, 1989, the police interviewed Anderson. He recounted that a day or so before Thanksgiving he was staying over at his sister's apartment and had passed out on her couch in the evening. Around midnight, three individuals entered the apartment. Anderson overheard the individuals discussing 2J's Produce and a van, and saw the individuals bringing a number of food items and a chain saw into the apartment. Anderson identified the three individuals as Dan Gochanour, Brad Eisenman, and a man he did not know, named Gary. From a Probation and Parole photograph of defendant Radi, Anderson identified him as the Gary he had seen on the night in question.

3

The police obtained a search warrant for each of the residences of Radi, Eisenman, and Gochanour. Some of the stolen items were found at each residence. At the residence of the defendant the police found a chain saw, VCR recorder, and a roll of pennies with writing on it indicating it was the property of A & I Distributing. Additionally, the police found six dozen Cascade Poultry eggs, three pounds of Darigold unsalted butter with 2J's stickers, seven packages of Montana Legend meat, and several bags of coffee. These food items matched the description of items stolen from 2J's Produce. Similar quantities and types of food items were found at the Eisenman and Gochanour residences.

On December 13, 1989, defendant was charged by information with two counts of burglary in violation of § 45-6-204, MCA. Charges were also filed against Gochanour and Eisenman. Defendant entered a plea of not guilty to the charges on December 21, 1989. On the morning his trial was to begin, April 9, 1990, defendant appeared with counsel and requested that he be allowed to withdraw his plea of not guilty. The District Court then accepted defendant's guilty plea and ordered the matter set for sentencing. Following a pre-sentencing investigation on May 22, 1990, defendant was sentenced to 20 years in the Montana State Prison on each of the two counts, the terms to run consecutively. On October 3, 1990, defendant appeared pro se and filed a motion to withdraw his guilty plea in the Missoula County District Court. This motion was denied on November 19, 1990.

Defendant contends the District Court erred in not allowing him to withdraw his guilty plea. At trial, defendant was to rely upon several witnesses to establish alibi as a defense. Defendant alleges that action by the prosecutors for the State effectively prohibited him from calling these witnesses to establish his innocence, and that as a result his guilty plea was not voluntary.

Before discussing the particular details of defendant's contention, we first state some general principles governing the withdrawal of a guilty plea. Concerning pleas in general, § 46-12-204, MCA states in part:

> **46-12-204. The plea - plea bargains.** (1) The defendant shall enter a plea of guilty or not guilty to the indictment, information, or complaint. If the defendant refuses to plead to the indictment, information, or complaint, a plea of not guilty must be entered.
> (2) The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge.

Additionally, § 46-16-105, MCA, provides that:

> **46-16-105. Plea of guilty.** (1) Before or during trial, a plea of guilty may be accepted when:
> (a) the defendant enters a plea of guilty in open court; and
> (b) the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea.
> (2) At any time before or after judgment the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.
> [Emphasis added.]

This Court has consistently stated that "[t]here is no set rule or standard which can be relied on in any given case where a

motion is made to withdraw a guilty plea." State v. Huttinger (1979), 182 Mont. 50, 55, 595 P.2d 363, 366. Each case involving a motion to withdraw a guilty plea must be considered in light of the specific record of the case. State v. Griffin (1975), 167 Mont. 11, 21, 535 P.2d 498, 503.

Initially, the grant or denial of a motion to withdraw a plea of guilty is within the sound discretion of the trial court. Matter of Hardy (1980), 188 Mont. 506, 614 P.2d 528. "A denial of a request to withdraw a guilty plea is subject to review only when there has been an abuse of discretion by the trial court." State v. Wilson (1982), 198 Mont. 305, 314, 645 P.2d 958, 963.

The process of pleading guilty to a criminal charge involves a waiver by the criminal defendant of numerous constitutionally based rights and protections. In light of the importance of the rights waived, it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford (1970), 400 U.S. 23, 91 S.Ct. 160, 27 L.Ed.2d 162.

This concept is expressed in the Montana statutes governing pleas. Additionally, this Court has added if "there is any doubt that a plea is not voluntary, the doubt should be resolved in the defendant's favor. On application to change a plea, all doubts should be resolved in favor of a trial on the merits." Huttinger, 595 P.2d at 367. "The fundamental purpose of allowing the

6

withdrawal of a guilty plea is to prevent the possibility of convicting an innocent man." State v. Arledge (1987), 228 Mont. 225, 232, 741 P.2d 781, 785.

There are at least three factors which this Court has determined should be considered in every case in which a defendant attempts to withdraw a guilty plea:

1. The adequacy of the District Court's interrogation at the time the plea was entered as to the defendant's understanding of the plea;

2. The promptness of the motion to withdraw the plea; and

3. The fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. State v. Long (1987), 227 Mont. 199, 201, 738 P.2d 487, 489.

Defendant alleges that prior to trial he intended to rely on the testimony of his common-law wife Jeannie Roberts and co-defendant Dan Gochanour to establish the defense of alibi. Shortly before trial the State entered into a plea agreement with co-defendant Gochanour. Defendant claims that Gochanour was not to be sentenced until after defendant's trial, and that the State's agreement with Gochanour would have been withdrawn if he had given evidence during the trial exonerating defendant. Additionally, defendant claims that Roberts was precluded from testifying on his behalf. He argues that if Roberts had testified truthfully as to his whereabouts on the night in question she would somehow have

7

been forced to implicate Gochanour in the crime. By so doing, she would have subjected defendant and his son, who is currently incarcerated in the Montana State Prison, to potential retaliation for having assisted the authorities in convicting Gochanour.

Defendant contends that upon realizing his two crucial witnesses had been placed in a situation in which they could not testify without retaliation from the State, he decided out of fear to change his plea from not guilty to guilty. Defendant quotes from this Court's opinion in State v. Mesler (1984), 210 Mont. 92, 682 P.2d 714, wherein we stated that:

> A change of plea will be permitted only if it fairly appears the defendant was ignorant of his rights and the consequences of his act, or he was unduly and improperly influenced either by hope or by fear in making the plea, or if it appears the plea was entered under some mistake or misapprehension.

Mesler, 682 P.2d at 716. Defendant urges that this case falls within the class of cases described in Mesler in which a change of plea should be permitted.

The usual basis on which to attack the denial of a motion to withdraw a guilty plea is that at the time the plea was entered the district court judge failed to adequately explain the significance of the guilty plea to the defendant. While the trial court's interrogation of defendant is not specifically attacked in this instance, it is helpful in determining if the plea was voluntary. At the time the plea was entered, the following discussion took place between the court and defendant:

8

THE COURT: Now this is Criminal Cause No. 9037, the *State of Montana against Gary E. Radi*, and the record should show that the defendant is personally present in court with his counsel, Public Defender Smith. State of Montana is represented by Deputy County Attorney Wing.

Now, Mr. Radi, you have been charged with two counts of burglary, felonies, and you have entered a plea of not guilty, and this is the time set for trial of your cases.

The jury is coming at this time. They're to be here by 10:00 o'clock, and it's twenty minutes until 10:00. But I am informed that you wish to change you plea; is this correct?

THE DEFENDANT: Yes, sir.

THE COURT: And why do you wish to change your plea?

THE DEFENDANT: I was involved in the crime.

THE COURT: You realize that you have a right to a trial by jury on these charges. That in the event you go to trial, you have the right to cross-examine the witness called by the state, you have the right to call witnesses in your own behalf, and the burden is on the State to prove your guilt beyond a reasonable doubt.

THE DEFENDANT: Yes, sir.

THE COURT: You have the right to be confronted by your accusers, and you have the privilege against self-incrimination.

THE DEFENDANT: Yes, sir.

THE COURT: These are rights you have.

THE DEFENDANT: Yes.

THE COURT: And if you do change your plea to a plea of guilty, you'll be giving up all of these rights.

THE DEFENDANT: Yes, sir.

THE COURT: You understand that.

THE DEFENDANT: Yes.

9

THE COURT: Now has anyone made any promise of leniency, told you things would go easy with you if you were to do this?

THE DEFENDANT: No.

THE COURT: Has the sheriff or anyone else used force or threats of force to cause you to do this?

THE DEFENDANT: No.

THE COURT: <u>Is this your own free and voluntary act after having discussed the matter fully with your attorney?</u>

THE DEFENDANT: <u>Yes, sir.</u> [Emphasis Added.]

The trial court then explained to defendant that the court would not be bound by the plea agreement. The court then explained the maximum possible sentence which defendant could receive. Finally, before accepting defendant's guilty plea, the court repeated the discussion concerning defendant's rights and the consequences of pleading guilty.

The District Court's colloquy adequately apprised defendant that by pleading guilty his right to call witnesses on his behalf to present favorable testimony, or to cross-examine the witnesses called by the State, was waived.

Co-defendant Gochanour could have been called as a witness by defendant. Defendant contends that "it was made crystal clear" that if Gochanour gave testimony exonerating defendant that Gochanour's plea agreement with the State would be rescinded and he would be sentenced to prison for the maximum possible term. The State counters that Gochanour's plea agreement was in no way dependent upon his testifying either for or against defendant.

10

Defendant has now come forward with an affidavit written by Gochanour after Gochanour accepted the plea bargain and was sentenced to a term in prison significantly shorter than the maximum possible sentence he could have received. Gochanour now states that the third person involved in the crimes was not defendant, but the now deceased Monte Anderson. Without attempting to discuss the trustworthiness or timing of the present affidavit, we conclude that the District Court did not abuse its discretion when it found that defendant was not prohibited from calling Gochanour as a witness on his behalf if he had chosen to do so. Further, defendant's fear of retaliation for the testimony of Roberts has not in any way been related to acts of the State.

We turn next to the issue of whether defendant's guilty plea was the result of a plea bargain in which the State agreed to dismiss a charge in return for a plea of guilty. The State did not dismiss any charges, but did agree not to pursue a persistent felony offender designation which could have added anywhere from five to 100 years on each of defendant's convictions. The State argues that this is comparable to having dismissed a charge and thus weighs in favor of allowing the plea bargain to stand. We agree. This Court has stated many times that it will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof. State v. Koepplin (1984), 213 Mont. 55, 689 P.2d 921.

11

Defendant has not brought forward evidence sufficient to convince this Court that the District Court's decision denying his motion to withdraw the guilty plea was an abuse of discretion. As we have previously stated:

> "Where a District Court has done all that it can to determine from the defendant or otherwise, that the proposed plea of guilty is voluntarily made, the defendant understands what he is doing and is advised of the consequences of his plea, including the nature and extent of his punishment, has been adequately advised by counsel, and has been treated fairly at all stages of the prosecution against him, and that in fact the defendant states he is guilty of the charges made, then this Court has a duty to support the District Court when it allows a plea of guilty to be entered in place of a plea of not guilty."

State v. Long (1987), 227 Mont. 199, 202, 738 P.2d 487, 489; quoting from State v. Lewis (1978), 177 Mont. 474, 484, 582 P.2d 346, 352.

We hold that defendant's guilty plea was voluntary, knowing, and intelligent. The District Court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. Affirmed.

_____
Justice

12

We concur:

_____
Chief Justice

_____
John Conway Harrison

_____
Terry Trieweiler

_____
Karla M. Gray
Justices

October 8, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary E. Radi
700 Conley Lake Rd.
Deer Lodge, MT  59722

Hon. Marc Racicot, Attorney General
Jennifer Anders, Assistant
Justice Bldg.
Helena, MT  59620

Robert Deschamps, III, County Attorney
Betty Wing, Deputy
Courthouse
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy